**Charles Harold HUGHES, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–95–00485–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 13, 1997.

Kristine C. Woldy, Houston, for Appellant.

John B. Holmes, Keli Pool Roper, Houston, for Appellee.

Before COHEN, HEDGES and FARRIS, *JJ.

## OPINION

COHEN, Justice.

A jury convicted appellant of capital murder, but could not agree on punishment. The trial judge assessed punishment at life in prison. We affirm.

### FACTS

Appellant shot and killed complainant while attempting to rob her and her husband.

### Motion for Continuance

Appellant first complains of the overruling of his motion for continuance, which was based on the absence of his expert witness concerning the reliability of eyewitness testimony. *See Jordan v. State*, 928 S.W.2d 550 (Tex.Crim.App.1996) (regarding relevance of expert testimony on eyewitness reliability); *Forte v. State*, 935 S.W.2d 172, 177–78 (Tex. App.—Fort Worth 1996, pet. ref'd). Whether to grant a continuance "is vested in the sound discretion of the trial court, and reversal of a judgment is justified only when it is shown the trial court has abused its discretion." *Hernandez v. State*, 643 S.W.2d 397, 399 (Tex.Crim.App.1982).

To obtain a continuance because of a missing witness, the defendant must show, among other things, he exercised due diligence to secure the witness's attendance. TEX.CODE CRIM. P. ANN. art. 29.06(2) (Vernon 1989). "If a defendant does not apply for process of a witness until a day or two before his trial, he has failed to exercise the due diligence which is necessary to support a motion for continuance." *Peoples v. State*, 477 S.W.2d 889, 891 (Tex.Crim.App.1972); *see also Norton v. State*, 564 S.W.2d 714, 716–17 (Tex.Crim.App.1978). Appellant had known for two weeks that trial was to begin March 13, 1995, but he did not attempt to subpoena the witness until March 13. The expert witness left the country two days earlier. We hold that appellant did not exercise due diligence. *See Peoples*, 477 S.W.2d at 891.

We overrule the first point of error.

### Videotape of Voir Dire

Appellant complains the trial judge erred by refusing to videotape voir dire. This was not error. *Curry v. State*, 910 S.W.2d 490, 492 (Tex.Crim.App.1995). No authority requires videotaping.

We overrule the second point of error.

### *Batson* Challenges

In points of error three, four, and five, appellant contends the trial judge erred in overruling his *Batson* objections to the State's peremptory challenges.

We follow the usual standard of review.[1] *Kemp v. State*, 846 S.W.2d 289, 304 (Tex. Crim.App.1992); *Batson v. Kentucky*, 476 U.S. 79, 96–97, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986).

Appellant asserts the State improperly struck black venire members Randolph, Horton, and Moore. The State was allowed 15 peremptory strikes. It used seven, including three on black venire members. The State

---

* The Honorable David F. Farris, former justice, Court of Appeals, Second District of Texas at Fort Worth, participating by assignment.

1. Evidence adduced at a *Batson* hearing is viewed in the light most favorable to the trial court's ruling. *Kemp v. State*, 846 S.W.2d 289, 304 (Tex.Crim.App.1992) (according the trial judge "great deference" in its *Batson* rulings because it is the trial judge who is present to assess the credibility of the prosecutor and his explanations). Thus, the trial court's ruling must not be overturned unless it was clearly erroneous. *Id.*

articulated race-neutral reasons for the strikes. The judge found the State's strikes were neutral, were based on answers by the three, and were not racially motivated. Appellant contends the State's race-neutral explanations were a pretext for unlawful discrimination.

Appellant claims the strike against Ms. Randolph was inappropriate because the State claimed Ms. Randolph's questionnaire answers were short and lacking detail despite the fact Zwerneman, a white male who the State did not strike, failed to answer several questions on his questionnaire. Appellant also claims the State "made it a practice" to have trouble communicating with black veniremen.

Appellant claims the strike against Ms. Horton was inappropriate because the responses Ms. Horton gave were favorable to the State's case, even though she was desensitized to crime and felt that an individual would not be a danger to society after 40 years in jail.

Appellant claims the strike against Mr. Moore was inappropriate because one of the State's reasons for the strike, that Mr. Moore had trouble understanding, was the same reason given for striking Ms. Randolph. Further, appellant contends that Mr. Moore's responses indicated he would be a favorable juror to the State's case.

■ The State offered more than one plausible reason for striking Ms. Randolph,[2] Ms. Horton,[3] and Mr. Moore.[4] The fact that there were other acceptable jurors possessing one or more of the objectionable attributes does not, by itself, establish a *Batson* violation. *Kemp*, 846 S.W.2d at 304. "[I]f a prosecutor takes some jurors of a particular race and rejects others, a trial judge may, in appropriate cases, infer that race was not the prosecutor's motive for the strikes, because others of the same race were accepted." *Jones v. State*, 845 S.W.2d 419, 422 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd); *see also Roberts v. State*, 866 S.W.2d 773, 777 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). In this case, the State accepted two black jurors and a black alternate juror, even though it had eight peremptory strikes unused. Appellant has failed to show an abuse of discretion.

We overrule the third, fourth, and fifth points of error.

### Motion for Mistrial

■ In his sixth point of error, appellant asserts the judge erred by denying a motion for mistrial. During the State's case-in-chief, Norwood Johnson testified as follows on direct:

Q: Now, did you see [appellant] in the fall of 1993?

A: I think '93, I seen him when he got out of jail in '93. About November.

[Defense Counsel]: Objection, Your Honor.

The Court: Sustained.

. . . .

Ladies and gentlemen, disregard the last answer given by the witness. Don't consider it for any purpose.

[Defense Counsel]: Your Honor, we move for mistrial.

The Court: Denied.

■ A mistrial should be granted only if the improper statement is "clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility

**2.** The State enumerated several reasons why Ms. Randolph was struck:
- She went blank during voir dire questioning;
- She failed to disclose a prior arrest and gave a poor explanation when confronted with it;
- The State felt she didn't read the instructions to the questionnaire or understand this was a death penalty case;
- She would rely on gut feelings and details; and
- She did not feel eyewitness testimony was reliable.

**3.** The State struck Ms. Horton because she indicated she was desensitized to crime; that a person could be rehabilitated after 40 years in jail; and because her husband, a robbery victim, could not identify the robber because of fear.

**4.** The State struck Mr. Moore because he had trouble understanding; the prosecutor had trouble communicating with him; Mr. Moore misread the questionnaire questions; Mr. Moore exhibited animosity toward the prosecutor; and the prosecutor felt Mr. Moore did not appreciate what his obligations would be as a juror.

of withdrawing the impression produced on their minds." *Hernandez v. State*, 805 S.W.2d 409, 414 (Tex.Crim.App.1990); *see also Kemp*, 846 S.W.2d at 289. The instruction to disregard cured the harm. *Gardner v. State*, 730 S.W.2d 675, 696 (Tex.Crim.App. 1987).

Appellant relies on *Salinas v. State*, where similar evidence came in at the punishment stage of a theft trial, and despite an instruction to disregard, the court reversed. 175 S.W.2d 253, 254 (Tex.Crim.App.1943). Though the Court of Criminal Appeals has not overruled *Salinas*, it has repeatedly ruled the opposite in several more recent indistinguishable cases. In *Gardner*, a witness testified during the guilt phase of a capital murder trial that the defendant "told me he had [stomach problems] when he was in the penitentiary." *Gardner*, 730 S.W.2d at 696. The court held the instruction to disregard cured the error. *Id.* at 697. In *Kemp*, the court affirmed conviction when similar evidence came in during the guilt phase of a capital murder trial. *Kemp*, 846 S.W.2d at 308.

The testimony here was unembellished, was unresponsive, and was not calculated to inflame the minds of the jury. We decline to follow *Salinas*. We hold the trial judge's instruction to disregard was sufficient. *See Gardner*, 730 S.W.2d at 696–97; *Kemp*, 846 S.W.2d at 308.

We overrule the sixth point of error.

### Extraneous Offense

In his seventh point of error, appellant contends the judge erred in admitting evidence of an extraneous aggravated robbery appellant committed the same day and just before the crime at issue. We follow the abuse of discretion standard of review. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990).

■■■ Extraneous offenses are admissible if relevant to a material issue and their probative value is not "substantially outweighed by the danger of unfair prejudice. . . ." Tex. R.Crim. Evid. 403, 404(b); *see Crank v. State*, 761 S.W.2d 328, 342 (Tex.Crim.App.1988). An extraneous offense may be relevant and admissible to rebut a defensive theory. *Crank*, 761 S.W.2d at 341. A defendant places his identity in issue when he raises an alibi defense. *Poullard v. State*, 833 S.W.2d 273, 277 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd), *citing Hines v. State*, 571 S.W.2d 322, 325 (Tex.Crim.App., 1978). By doing so, the defendant opens the door for the State to offer rebuttal testimony of an extraneous offense to prove identity if the extraneous offense has common distinguishing characteristics with the offense for which the defendant was on trial. *Poullard*, 833 S.W.2d at 277, *citing Chambers v. State*, 601 S.W.2d 360, 362 (Tex.Crim.App.1980). In *Poullard*, a robbery case, this Court held that a prior extraneous robbery was admissible for the issue of identity where the robbery at issue and the extraneous robbery both occurred at night, the robber used a revolver, the victims were of a similar type, the robberies were four days apart, the locations of robberies were close geographically, and the victim in the extraneous robbery positively identified the defendant as the robber. *Id.* at 276.

Here, appellant raised an alibi defense when Darvin Greer testified appellant was not at the crime scene at the time of the murder. The State presented testimony of an extraneous robbery to rebut appellant's alibi. The trial judge instructed the jury to limit its consideration of the testimony to the identity of appellant. The record shows the extraneous robbery and the murder had the following characteristics in common:

- the robbery took place directly across the freeway from the murder scene about 45 to 60 minutes before the murder;
- the robber, like appellant, was wearing a hat and a shiny jumpsuit;
- the robber, like appellant, was left-handed;
- the revolver used, as in this crime, had an oval barrel;
- the robber, as in this crime, was interested in the victim's watch and money.

Because the robbery was offered to rebut appellant's alibi testimony and shared several distinguishing and common characteristics with the capital murder, the judge did not

abuse his discretion in admitting the testimony. *See* TEX.R.CRIM. EVID. 404(b).

We overrule the seventh point of error.

The judgment is affirmed.