Affirmed and Opinion filed May 17, 2005









Affirmed and Opinion filed May 17, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01376-CR

____________

 

DAVID HARRIS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 337th
District Court

Harris County, Texas

Trial Court Cause No. 946,179

 



 

O P I N I O N

Appellant, David Harris, appeals his
conviction for burglary and his sentence of fifteen years= incarceration in
the Texas Department of Criminal Justice, Institutional Division.  On appeal, appellant claims (1) he was
prosecuted and punished in violation of the Double Jeopardy Clause, (2) the
trial court erred in denying his motion for a mistrial when the jury was told
he previously had been in jail, and (3) the evidence is legally and factually
insufficient to support his conviction. 
We affirm.








The record reflects the complainant,
Chanta Flaniken, and appellant had two small children.  While there is a dispute regarding whether
they enjoyed a common law marriage, it is undisputed they were estranged at the
time of the offense.  Accordingly, Flaniken
lived in an apartment; appellant lived in a house with his grandmother.

On April 18, 2003, Flaniken telephoned
appellant and asked if he would Awatch the kids@ while she went Aout@ for the
evening.  Appellant agreed.  Flaniken subsequently dropped off the
children at appellant=s residence.  During the course of the evening, however,
appellant began repeatedly calling Flaniken on her cell phone.  Appellant also left messages threatening to
beat Flaniken if she got home after 1:00 a.m. 
Flaniken did not return home until well after 1:00 a.m.

At approximately 7:30 a.m., appellant
called Flaniken at her apartment and informed her he was coming over.  Although Flaniken told him not to come,
appellant, nonetheless, arrived outside her apartment a short time later.  Appellant started beating on the front door,
demanding that Flaniken let him in. 
Flaniken told appellant she was not going to let him in and went
upstairs to her bedroom.  Flaniken then Aheard the door
like it got busted open.@ 
Appellant ran upstairs to Flaniken=s bedroom.  Flaniken attempted to call the police, but
appellant snatched the phone from her. 
Appellant then pushed Flaniken on the bed and said he was going to get a
knife. 

Flaniken fled down the stairs ahead of
appellant, grabbed a knife, and threw it under the stove or couch where
appellant could not get it.  Flaniken
told appellant to leave, but he would not. 
Appellant then punched her in the shoulder, pushed her on to the couch,
and then started choking her.  








Officer Antonio Boutte of the Houston
Police Department responded to the dispatcher=s call of a
burglary in progress at Flaniken=s apartment.  Officer Boutte approached the back door of
the apartment, and looking through a window, saw appellant in the act of
choking Flaniken.  When Officer Bouttee
yelled, APolice Department,@ appellant
released Flaniken.

At approximately the same moment, Officer
Rodney Jaime of the Houston Police Department was approaching the front door of
Flaniken=s apartment.  Officer Jaime heard what sounded like a
struggle and someone screaming inside the apartment.  Appellant then opened the front door as if to
flee, but when he saw Officer Jaime, he ran back inside.

After appellant was placed in custody,
Officer Jaime observed that the interior door frame of the front door was on
the floor, which indicated the door had been kicked in.  Officer Jaime related that in such
circumstances, AThe latch usually stays.  The door frame usually breaks.@

 Flaniken told the police appellant had choked
her.  Officer Bouttee observed that the
area around Flaniken=s neck was Areddish@ and her clothes
were Amessed up.@ 

                                   Double
Jeopardy

In his first point of error, appellant
contends the trial court committed reversible error in overruling his plea in
bar because he Ahad already been prosecuted and
punished for the same conduct under a separate contempt order regarding
the same conduct, in violation of [his] federal constitutional right against
double jeopardy.@ 
(emphasis added).  Appellant then
alleges in the body of his appellate brief that he was subjected to double
jeopardy because he Ahad been previously prosecuted for a
violation of a family court protective order for the same conduct under
which the appellant was . . . prosecuted.@  (emphasis added).  Citing Ex parte Rhodes as authority,
appellant presents his supplication for an aquittal stating that his Aplea in bar
reflected that a copy of the family court=s contempt
order was attached to the plea,@ but was missing
from the appellate record.  974 S.W.2d
735 (Tex. Crim. App. 1998)  (emphasis
added).  Accordingly, this court abated
the appeal on August 19, 2004, and ordered the district clerk to supplement the
record with the missing documentation.








It has been said there Ais nothing more
horrible than the murder of a beautiful theory by a brutal gang of facts.@[1]  Here, the appellate record (as supplemented
by the district clerk) offers absolutely no hint of support for appellant=s contention.  Appellant was never prosecuted for violating
a protective order, never held in contempt, and never punished for violating a
protective order.[2]  In short, the factual representations in
appellant=s brief are entirely specious.  Moreover, the complaint on appeal is a gross
exaggeration and amplification of the argument presented to the trial
court.  At trial, appellant argued that
the mere imposition of a protective order (not a violation of a
protective order) is sufficient to constitute punishment particularly where
attorney fees and costs have been imposed against him.  We might well, at this point, overrule
appellant=s first point of error because (1) it does
not comport with the objection made at trial and (2) is entirely unsupported by
the record.  See In re D.T.C., 30
S.W.3d 43, 48 (Tex. App.CHouston [14th Dist.] 2000, no pet.)
(holding an objection at trial not comporting with complaint on appeal does not
preserve error for appellate review); Wyatt v. State, 836 S.W.2d 334,
335 (Tex. App.CHouston [14th Dist.] 1992, pet. ref=d) (holding mere
assertions in appellant=s brief, unsupported by record, present
nothing for review).  In the interest of
justice, however, we will consider the much more modest (and factually
accurate) argument presented to the trial court as if it had been properly
presented for appellate review. 








The record reflects the burglary of
Flaniken=s apartment
occurred on April 19, 2003, and appellant was subsequently charged by
indictment on May 20, 2003.  The burglary
cause of action was assigned to the 337th District Court.  In the meantime, Flaniken apparently applied
for a protective order in the 246th District Court.[3]  On May 21, 2003, a hearing was conducted on
Flaniken=s application for
a protective order, and after considering the pleadings and evidence, the 246th
District Court found Athat family violence has occurred and that
family violence is likely to occur again in the future.@  Accordingly, the 246th District
Court issued a protective order instructing appellant not to (1) commit further
violence against Flaniken, (2) communicate directly with her, (3) communicate a
threat to Flaniken via any person, or (4) go near her residence or place of
employment.  The court further ordered
appellant to reimburse the prosecuting attorney $300 as reasonable and
necessary attorney fees, pay the district clerk $61 for filing fees and costs
of service, and also to pay the clerk for unspecified court costs, charges, and
expenses incurred in connection with the protective order.

Thereafter, on August 11, 2003, appellant
filed a special plea of double jeopardy in the 337th District Court
in which he alleged that he already had been punished for the burglary of
Flaniken=s apartment in the
246th District Court when that court (1) assessed attorney=s fees of $300.00
against him, (2) ordered him to reimburse Harris County the sum of $61.00 for
filing fees, and (3) ordered him to pay the unspecified amount of all costs,
fees, charges or expenses incurred in connection with the protective
order.  The 337th District
Court denied appellant=s double jeopardy plea.








The Double Jeopardy Clause of the Fifth
Amendment to the United States Constitution provides that no person shall Abe subject for the
same offence to be twice put in jeopardy for life or limb.@  U.S. Const.
amend. V.[4]  The Double Jeopardy Clause protects against
(1) a second prosecution for the same offense after acquittal, (2) a second
prosecution for the same offense after conviction, and (3) multiple punishments
for the same offense.  Department of
Revenue of Montana v. Kurth Ranch, 511 U.S. 767, 768 n.1 (1994).

A protective order is in the nature of a
civil injunction.  See Tex. Fam. Code Ann. ' 88.002(5) (Vernon
2002).  The applicant for a protective
order must allege that the respondent has committed an act of family
violence.  Tex. Fam. Code Ann. ' 82.004 (Vernon
2002).  The application must then be
served upon the respondent in the same manner as citation under the Texas Rules
of Civil Procedure.  Tex. Fam. Code Ann. ' 82.043 (Vernon
2002).  The respondent may, but is not
required to, file an answer.  Tex. Fam. Code Ann. ' 82.021 (Vernon
2002).  If, after a hearing, the court
finds the respondent committed family violence, it may require the respondent
to (1) complete a battering intervention and prevention program, (2) counsel
with a social worker, family service agency, physician, psychologist, licensed
therapist, or licensed professional counselor, or (3) perform acts necessary or
appropriate to prevent or reduce the likelihood of family violence (e.g.,
refrain from committing further acts of violence, communicating with the
applicant, going near the applicant=s residence,
etc.).  Tex.
Fam. Code Ann. ' 85.022 (Vernon 2002).  The purpose of a protective order is Ato prevent an
individual from engaging in [further] violent or threatening acts against,
harassing, contacting or communicating with, or being in physical proximity to
another individual.@  Tex. Fam. Code Ann. ' 88.002(5).  As is common in many civil proceedings, the
court may assess reasonable attorney fees against the party found to have
committed family violence.  Tex. Fam. Code Ann. ' 81.005 (Vernon
2002).








Here, the record is silent as to what
incident formed the basis for the issuance of the protective order.  Flaniken testified in the criminal trial that
appellant previously had choked and hit her, and that he had broken her door on
two other occasions.  Moreover, Flaniken=s application for
a protective order was not introduced in the trial court and is not in the
appellate record.  Thus, it is possible
the protective order was issued on some basis other than the April 19, 2003
incident.   Accordingly, appellant has
not shown that the conduct forming the basis for the protective order is the
same conduct underlying the instant criminal prosecution.

However, even if it had been established
that Flaniken obtained a protective order on the basis of appellant=s April 19, 2003
burglary and assault, no jeopardy would attach to prevent appellant=s criminal
prosecution. 

In support of his argument, appellant
relies on Ex parte Rhodes, 974 S.W.2d 735 (Tex. Crim. App. 1998).  We do not find Rhodes applicable to
the facts in the case at bar.  In a
divorce proceeding, the trial court entered a decree ordering that the parties= child reside in
Harris County, and enjoining either party from changing the child=s residence
without prior court approval.  Id.
at 736.  In violation of that order, the
defendant removed his child to Malaysia and Singapore.  Id. 
The defendant was arrested after returning to the United States and
charged with interference with child custody. 
Id.  Prior to his arrest,
the defendant=s wife had instituted proceedings to have
him found in contempt of court for violating the custody order.  Id. at 736B37.  The court found the defendant was in contempt
of court for violating the custody order, assessed as punishment a $100 fine
and $2500 in legal fees, and required the defendant to post a $2500 bond to
ensure future compliance with the custody order.  Id. at 737.  The Texas Court of Criminal Appeals held that
because the defendant already had been prosecuted for contempt of court, his
subsequent prosecution for interference with child custody was barred by the
double jeopardy clause.  Id. at
742.  








Here, appellant contends that he Ahad already been
prosecuted and punished for the same conduct under a separate contempt order
regarding the same conduct.@  However, unlike Rhodes, there is
nothing in the record to suggest that there was any Acontempt@ action against
appellant concerning the same conduct as in the current prosecution for
burglary.  See Harren v. State,
No. 03-99-00752-CR, 2000 WL 766263, at *2 (Tex. App.CAustin June 15,
2000, no pet.) (not designated for publication) (stating that issuance of
protective order following act of family violence is not akin to conviction for
criminal contempt for violating court order). 
Instead, after the occurrence of the burglary on April 19, 2003, the
trial court granted Flaniken=s request for a
protective order against appellant; therefore, appellant=s conduct on April
19, 2003, could not have violated a contempt order which had not yet been
entered and the subsequent prosecution for burglary is not barred by a prior
conviction for the same offense.  

The El Paso Court of Appeals has
considered the issue of whether the entry of a protective order constitutes
punishment for double jeopardy purposes. 
Ex parte Chairez, No. 08-00-00083, 2001 WL 63033, at *3 (Tex.
App.CEl Paso January
25, 2001, no pet.) (not designated for publication).  In Chairez, the court first observed
that if a civil sanction or remedy imposed on a person does not constitute Apunishment,@ then a subsequent
criminal prosecution of that person arising out of the same situation,
circumstances, or conduct does not implicate or violate protections against
double jeopardy.  Id. at *2.[5]  The Chairez court also explained that
the primary purpose of the Family Code authorizing the entry of a protective
order is to prevent domestic violence and protect the victims of domestic
violence, not to punish the offenders.  Id.  This same policy was addressed in the Texas
Code of Criminal Procedure.  Id.
at *3.[6]  Thus, the Chairez court determined
that the entry of a protective order does not constitute punishment for double
jeopardy purposes.  Id.  








The Austin Court of Appeals similarly held
the primary purpose of a protective order is to protect against future acts of
family violence.  Harren, 2000 WL
766263, at *2.  Therefore, such
proceeding issuing the protective order is not the equivalent of prosecution
and the protective order is not punishment. 
Id.[7]

The Double Jeopardy Clause of the Fifth
Amendment protects against multiple punishments for the Asame offense.@  State v. Houth, 845 S.W.2d 853, 856 (Tex.
Crim. App. 1992).  It also protects
against successive prosecutions for the Asame offense@ following
acquittal or conviction.  Id.  While the imposition of a protective order is
always in response to an act or threat of violence, it can hardly be said that
the order is either a Aprosecution@ or a Apunishment@ for that act or
threat of violence.  Certainly, the
Legislature never intended a protective order to constitute a Aprosecution@ or a Apunishment.@  In fact, it has authorized the issuance of a
protective order and the subsequent criminal prosecution for the same
underlying conduct.  Chairez, 2001
WL 63033, at *4B5.[8]

Assuming arguendo the entry of the
protective order here was based on the same conduct underlying the instant
criminal prosecution, we find the prosecution of the criminal charge is not
barred by double jeopardy.

                                          Motion
for Mistrial

In his second point of error, appellant
claims the trial court erred in refusing to grant a mistrial after the jury
heard he previously had been in jail in violation of his right to a fair and
impartial jury trial.  We review the
trial court=s decision to deny a mistrial for an abuse
of discretion.  Wead v. State, 129
S.W.3d 126, 129 (Tex. Crim. App. 2004).  








During the State=s examination,
Flaniken testified:

Q. 
How long did you-all date?

A. 
On and off, about five years.

Q. 
And have you since ended that relationship?

A. 
Yes.

Q. 
How long ago did you end your relationship with him?

A. 
Since the last time [appellant] got out of jail.  Like he got out in 2000 B 

MR. LEITNER:  Your Honor, I object to that.

THE COURT:  Sustained.

MR. LEITNER:  I ask the jury be instructed to disregard.

THE COURT:  The jury will disregard the last comment.

MR. LEITNER:  And I move for a mistrial.

THE COURT:  Overruled.








Testimony that refers to or implies
extraneous offenses can be rendered harmless by an instruction to disregard by
the trial court, unless the evidence was so clearly calculated to inflame the
minds of the jury or is of such damning character as to suggest it would be
impossible to remove the harmful impression from the jury=s mind.  Kemp v. State, 846 S.W.2d 289, 308
(Tex. Crim. App. 1992).  Flaniken=s response was not
responsive to the prosecutor=s question.  Rather than merely state that their
relationship ended in 2000, Flaniken added that it had ended A[s]ince the last
time [appellant] got out of jail.  Like
in 2000 B.@  However, her testimony was not embellished in
any manner.  We do not find that this
uninvited and unembellished reference to appellant=s incarceration
was so inflammatory as to undermine the efficacy of the trial court=s instruction to
disregard to the jury.  See Id.
(finding witness= testimony, Athis caller also
provided information that she had a son . . . who had recently been released
from the penitentiary,@ was not so inflammatory as to undermine
efficacy of trial court=s instruction to disregard); Gardner v.
State, 730 S.W.3d 675, 697 (Tex. 
Crim. App. 1987) (finding witness= testimony, A[the defendant]
told me that even when he was in the penitentiary, that he had stomach
problems,@ was not so inflammatory as to undermine
efficacy of trial court=s instruction to disregard); Hughes v.
State, 962 S.W.2d 89, 92 (Tex. App.CHouston [1st
Dist.] 1997, pet. ref=d) (finding witness= testimony, Awhen [the
defendant] got out of jail . . .@ was not
calculated to inflame minds of jury and instruction to disregard was sufficient
to cure any harm).  

Furthermore, another reference to appellant=s prior
incarceration was made during cross-examination.  Flaniken testified in response to defense
counsel=s questioning:

Q. 
From the very beginning what was y=all=s relationship like?

A.  Off and on,
because he=s been in and out of jail.

Appellant did not object to this testimony.  >A[I]nadmissible
evidence can be rendered harmless if other evidence is admitted at trial
without objection and it proves the same fact that the inadmissible evidence
sought to prove.=@  Mayes v. State, 816 S.S.2d 79, 88 (Tex.
Crim. App. 1991) (quoting Anderson v. State, 717 S.W.2d 622, 628 (Tex.
Crim. App. 1986)).  We conclude the trial
court did not abuse its discretion in denying appellant=s motion for a
mistrial, and even if the trial court had abused its discretion, the subsequent
admission of the same evidence rendered any error harmless.  Appellant=s second point of
error is overruled.

             Legal and
Factual Sufficiency of the Evidence

In his third
through eighth points of error, appellant claims the evidence is not legally
and factually sufficient to support his conviction for burglary because the
State failed to prove that (1) he committed assault or attempted assault, (2)
Flaniken had no greater right to possession of the apartment than he did, and
(3) he entered the apartment without the effective consent of Flaniken.  








When reviewing the legal sufficiency of
the evidence, we must view the evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999).  In conducting this review, we do not engage
in a second evaluation of the weight and credibility of the evidence, but only
ensure that the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993).  

When reviewing the factual sufficiency of
the evidence, we need answer only one question: 
Considering all of the evidence in a neutral light, was the trier of
fact rationally justified in finding guilt beyond a reasonable doubt?  Zuniga v. State, 144 S.W.3d 477, 484 (Tex.
Crim. App. 2004).  There are two ways in
which the evidence may be insufficient.  Id.  First, when considered by itself, evidence
supporting the verdict may be too weak to support the finding of guilt beyond a
reasonable doubt.  Id.  Second, there may be evidence both
supporting, and contrary to, the verdict. 
Id.  Weighing all the
evidence under this balancing scale, the contrary evidence may be strong enough
that the beyond-a-reasonable-doubt standard could not have been met and the
guilty verdict should not stand.  Id.
at 485.  

It is within the province of the trier of
fact to resolve any conflicts and inconsistencies in the evidence.  Heiselbetz v. State, 906 S.W.2d 500,
504 (Tex. Crim. App. 1995).  The trier of
fact is free to believe or disbelieve part or all of a witness= testimony.  Jones v. State, 984 S.W.2d 254, 258
(Tex. Crim. App. 1998).  

In his third and fourth points of error, appellant contends
the evidence is legally and factually insufficient to support his conviction
because the State failed to prove that he committed assault or attempted
assault.  With regard to the offense of
burglary, the Texas Penal Code provides that

(a) A person commits the offense of
burglary if, without the effective consent of the owner, the person:

                                                    *        *       
*

(3) enters a building or habitation and commits or attempts
to commit a felony, theft or assault.








Tex. Pen. Code
Ann. ' 30.02(a)(3) (Vernon 2003).  A person commits the offense of assault when
he (1) intentionally, knowingly, or recklessly causes bodily injury to another,
or (2) intentionally, or knowingly threatens to cause imminent bodily injury to
another.  Tex. Pen. Code Ann. ' 22.01(a)(1) and
(2) (Vernon Supp. 2004B05). 


Appellant argues that although Flaniken
testified that he threatened to get a knife and later pushed her around and
Officer Boutte testified that he saw appellant place Flaniken in a choke hold,
there was no testimony that Flaniken understood his statement to be an imminent
threat of harm.  Flaniken testified that
appellant had left messages on her cell phone, stating that he was going to
beat her, had started beating on her door, came into her apartment after she
heard the door Abusted open,@ snatched the
phone from her as she was attempting to call the police, stated he was going to
get a knife, punched her in the shoulder, pushed her on the couch, and started
choking her.  Officer Boutte testified
that when he arrived, he observed appellant with Flaniken in a choke hold and
after appellant had been arrested, he observed Flaniken Acrying
hysterically.@ 
Appellant testified that he did not threaten Flaniken with a knife or
otherwise.  He claimed he pushed her away
when she came up to him Ahollering@ about the door he
had broken open.  

Given all the circumstances surrounding
appellant=s actions, we find the evidence supports a
determination beyond a reasonable doubt that Flaniken understood appellant=s statement to be
a threat of imminent harm.  When viewed
neutrally, the evidence is not so obviously weak as to render the verdict
clearly wrong or so greatly outweighed by contrary proof as to indicate
manifest injustice.  








Appellant also claims there was no showing
that any contact between him and Flaniken resulted in bodily injury to her
because Flaniken=s injuries were minor and she did not
require medical attention.  Bodily injury
means physical pain, illness, or any impairment of physical condition.  Tex.
Pen. Code Ann. ' 1.07(a)(8) (Vernon Supp. 2004B05).  Flaniken testified that appellant punched her
on the shoulder, pushed her on the couch, and started choking her.  Officer Boutte testified that he saw
appellant with Flaniken in a choke hold and later observed reddish marks around
Flaniken=s neck.  Appellant testified that after he pushed
Flaniken, she showed him a scratch she had sustained.  Photographs showing a scratch sustained by
Flaniken on her collarbone were admitted into evidence.  

When viewed in the light most favorable to
the verdict, we find the evidence supports a determination beyond a reasonable
doubt that appellant intentionally and knowingly caused bodily injury to
Flaniken.  When viewed neutrally, the
evidence is not so obviously weak as to render the verdict clearly wrong or so
greatly outweighed by contrary proof as to indicate manifest injustice.  Appellant=s third and fourth
points of error are overruled.  

In his fifth and sixth points of error,
appellant asserts the evidence is legally and factually insufficient to support
his conviction for burglary because the State failed to prove that Flaniken had
a greater right to possession of the apartment than he did.  AOwner@ means a person
who Ahas title to the
property, possession of the property, whether lawful or not, or a greater right
to possession of the property than the actor.@  Tex.
Pen. Code Ann. ' 1.07(a)(35)(A).  

Appellant admits that the trial record
shows that Flaniken resided alone at the apartment on Gillette Street and,
consequently, had possession of the apartment, and that the lease agreement
signed by Flaniken did not include his name. 
Appellant testified that he resided at his grandmother=s house on Webster
Street, that his driver=s license reflects his residence was his
grandmother=s house on Webster Street, and that he did
not have keys to Flaniken=s apartment.  

Appellant, however, claims he and Flaniken
were husband and wife at the time of the incident, that during April 2003, he
and Flaniken were Atogether every day,@ and that he
helped Flaniken with the bills. 
Appellant argues that under these circumstances, the record established
a community property basis for possession of the apartment.  








Flaniken testified that appellant held
himself out as her husband after they had children.  When appellant did this, Flaniken did not
correct him.  Flaniken, however,
testified they never lived together in the same household and the longest they
stayed together was two nights. 
Appellant had no belongings at her apartment.  The jury was not instructed in the charge to
determine whether a common law marriage between appellant and Flaniken existed.[9]  However, even if a common law marriage
existed between appellant and Flaniken, such marriage did not diminish in any
way Flaniken=s greater right to possession of the
apartment.  See Gomez v. State,
905 S.W.2d 735, 741 (Tex. App.CHouston [14th
Dist.] 1995), aff=d on other grounds, 962 S.W.2d 572
(Tex. Crim. App. 1998) (stating marital relationship does not authorize spouse
to enter estranged spouse=s residence).  

We find the evidence, when viewed in the
light most favorable to the verdict, supports a determination beyond a
reasonable doubt that Flaniken had a greater right to possession of the
apartment than appellant.  When viewed
neutrally, the evidence is not so obviously weak as to render the verdict
clearly wrong or so greatly outweighed by contrary proof as to indicate
manifest injustice.  Appellant=s fifth and sixth
points of error are overruled.  

In his seventh and eighth points of error,
appellant claims the evidence is legally and factually insufficient to support
his conviction for burglary because the State failed to prove he entered the
apartment without Flaniken=s effective
consent.  The charge defined Aeffective consent@ as Aassent in fact,
whether express or apparent, and includes consent by a person legally
authorized to act for the owner.  Consent
is not effective if induced by force, threat, deception or fraud.@  See Tex.
Penal Code Ann. '1.07(a)(11) and (19).

Appellant argues Flaniken=s testimony that
she did not want him to enter the apartment on April 19, 2003, does not end the
inquiry.  Appellant states that he had
spent the night with Flaniken in the apartment a few days before the alleged
offense, he had been in the apartment on numerous other occasions, and he and
Flaniken had an ongoing relationship.  








In addition to Flaniken=s testimony that
she did not want appellant to enter her apartment, appellant admitted that when
Flaniken refused to unchain the door, he broke the chain on the door and pushed
it open.  Moreover, there is evidence
that appellant actually kicked in the door. 
After Flaniken told appellant he could not come into the apartment and
had returned upstairs, she heard the door Abusted open.@  Officer Jaime testified the front door frame
was on floor, indicating that the door had been kicked in.  Appellant denies kicking in the door, instead,
asserting the police were responsible for kicking in the door. 

We hold the evidence, when viewed in the
light most favorable to the verdict, supports a determination beyond a
reasonable doubt that appellant entered Flaniken=s apartment
without her effective consent.  When
viewed neutrally, the evidence is not so obviously weak as to render the
verdict clearly wrong or so greatly outweighed by contrary proof as to indicate
manifest injustice.  Appellant=s seventh and
eighth points of error are overruled.  

Accordingly, the judgment of the trial
court is affirmed.

 

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Opinion filed May 17, 2005.

Panel
consists of Justices Anderson, Hudson, and Frost.

Publish
C Tex. R. App. P. 47.2(b).











[1]  Francois La
Rochefoucauld [1747-1827] C David S.
Shrager and Elizabeth Frost, The Quotable Lawyer 109 (1986).





[2]  We note, in
passing, that even if appellant=s assertions of fact had been supported by the record,
he would not be entitled to relief. 
Because the elements of contempt (or the violation of a protective
order) are distinctly different from burglary of a habitation, punishment for
one does not bar prosecution and punishment for the other.  See Ex parte Arenivas, 6 S.W.3d 631,
635B36 (Tex. App.CEl Paso
1999, no pet.) (holding elements of criminal contempt for violating protective
order were different from elements for injury to child and, thus, punishment
for contempt did not bar prosecution for injury to a child).





[3]  In a county
with a population of more than 1.5 million, the district court is, in most
cases, required to set the hearing date not later than 20 days after the
application is filed.  See Tex. Fam. Code Ann. ' 84.02 (Vernon 2002).





[4]  The federal
provision is applicable to the states through the Fourteenth Amendment.  Benton v. Maryland, 395 U.S. 784, 795B96 (1969).  





[5]  Citing Ex
parte Tharp, 935 S.W.2d 157, 159B61 (Tex.
Crim. App. 1996) (holding that administrative license suspension did not
constitute punishment and therefore did not implicate protections against
double jeopardy in regard to subsequent prosecution for DWI); Fant v. State,
931 S.W.2d 299, 308B09 (Tex. Crim. App. 1996) (holding that Texas= civil asset-forfeiture scheme did not constitute
punishment and, therefore, did not implicate protections against double
jeopardy in regard to subsequent prosecution for offense underlying asset
forfeiture); Ex parte Sheridan, 974 S.W.2d 129, 131B34 (Tex. App.CSan
Antonio 1998, pet. ref=d) (holding that cancellation of defendant=s alcoholic beverage license because he lied on his
application did not constitute punishment and, therefore, did not bar his
subsequent prosecution for making false statements on his application). 





[6]  See Tex. Code Crim. Proc. Ann. art. 5.01(a)
(Vernon Supp. 2004B05) (AVictims of family violence are entitled to the maximum
protection from harm or abuse or the threat of harm or abuse as is permitted by
law.@); Id. at 5.01(b) (AIn any law enforcement, prosecutorial, or judicial
response to allegations of family violence, the responding law enforcement or
judicial officers shall protect the victim, without regard to the relationship
between the alleged offender and victim.@).  





[7]  Citing Tharp,
935 S.W.2d at 161 (holding an administrative driver=s license suspension for failing intoxication test is
remedial rather than punitive, and does not bar prosecution for driving while
intoxicated).





[8]  Compare
Tex. Crim. Code Proc. Ann. art.
5.06(a)(1) (Vernon Supp. 2004B05) (providing that neither the prosecuting attorney
nor the court may Adismiss or delay any criminal proceeding that involves
a prosecution for an offense that constitutes family violence because a civil
proceeding is pending or not pending;@), and
art. 5.06(b) (AA prosecuting attorney=s
decision to file an application for a protective order under Chapter 71, Family
Code, should be made without regard to whether a criminal complaint has been
filed by the applicant.@), with Tex.
Fam. Code Ann. ' 81.008 (Vernon 2002) (providing Arelief and remedies provided by this substitle are
cumulative of other relief and remedies provided by law@).  





[9]  To find that a
common law marriage exists in Texas, the following elements must be
established: (1) an agreement to be married; (2) living together in Texas as
husband and wife subsequent to the agreement to be married; and (3)
representing to others in Texas that they were married.  Tex.
Fam. Code Ann. ' 2.401(a)(2) (Vernon 1998).