Opinion filed June 15, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed June 15, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00128-CR 

                                                    __________

 

                             RAYNARD DEWAYNE ALLEN, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                 On
Appeal from the Criminal District Court No. 3

 

                                                          Dallas
County, Texas

 

                                              Trial
Court Cause No. F-0372853-J

 



 

                                                                   O
P I N I O N

 

A jury convicted appellant, Raynard Dewayne Allen,
of aggravated robbery.  The trial court
assessed punishment at twenty-two years confinement in the Institutional
Division of the Texas Department of Criminal Justice.  We find no error and affirm.

                                                               Background
Facts








The State alleged that Allen robbed Hubert
Chandler at gunpoint on or about June 14, 2003. 
Chandler and a coworker were working the graveyard shift at a 7-Eleven
in Oak Cliff.  They saw four individuals
putting on masks outside the store. 
Chandler testified that Allen entered the store with a gun and started
saying, A[D]rop
out.@  Chandler understood this to mean that Allen
wanted him to open the register because Allen was pointing the gun at him.  Allen also demanded the money in the safe,
but Chandler could not open it.  Chandler
was afraid that he would be shot if he did not comply, and he gave Allen the
money from the register.

Chandler recognized Allen because he had seen him
in the store before.  Chandler later
identified Allen in a photo lineup and in court.  The jury found Allen guilty as charged in the
indictment.  The trial court conducted a
punishment hearing and sentenced Allen to twenty-two years confinement in the
Texas Department of Criminal Justice, Institutional Division.

                                                                         Issues

Allen challenges his conviction with four
issues.  Allen alleges first that the
trial court erred by denying his Batson[1]
challenge; second, that he was erroneously denied the opportunity to
cross-examine an accomplice witness about a plea bargain arrangement; third,
that the trial court erred by not granting a mistrial because of prosecutorial
misconduct during closing argument; and four, that he was improperly denied his
right of allocution.

Batson Challenge

Allen contends in his first issue that his
constitutional rights were violated because of the State=s
use of peremptory strikes to exclude minority veniremembers from serving on his
jury.  The State struck seven minority
veniremembers.[2]  Three were black females, one was a black
male, and the remaining three were Hispanic females.  Four African-Americans were seated on the
jury.  The record does not indicate if any
Hispanics were seated.  Allen asserted a Batson
objection to the State=s
strikes contending that none of the seven prospective jurors had made a
disqualifying remark and requested the State to proffer race-neutral reasons
for its strikes.

The prosecutor explained that four prospective
jurors were struck because they had a criminal history that they failed to
reveal during voir dire. One of the four also had a brother who had committed
an assault.  The prosecutor noted that
this was similar to Allen=s
charged offense and pointed out that he had struck non-minority veniremembers
for not revealing past criminal histories.








Two of the remaining three strikes were made on
minority veniremembers who were under the age of twenty-five.  Apparently no Anglo member was that
young.  The prosecutor explained that
people under twenty-five were sometimes “light” on life experiences and tended
to be more sympathetic toward a young defendant.  The last challenged strike was used on an
individual who had commented about her personal experience with mistaken
identification.  The prosecutor stated
that, because identity was at issue, he did not feel as though she would make a
good juror.  No other veniremember made a
similar remark.  Allen did not
cross-examine the prosecutor or offer any evidence.  The trial court found the prosecutor=s proffered reasons were racially
neutral and overruled Allen=s
Batson objection.

We may reverse a trial court=s Batson ruling only if it
appears clearly erroneous.  Rhoades v.
State, 934 S.W.2d 113, 123-24 (Tex. Crim. App. 1996).  This requires a definite and firm conviction
that a mistake has been made. Id. We give great deference to the trial
court=s
determination and view the evidence in the light most favorable to the trial
court=s
ruling.  Jasper v. State, 61
S.W.3d 413, 422 (Tex. Crim. App. 2001).

The Fourteenth Amendment prohibits the use of
peremptory challenges in a racially discriminatory manner.  Batson, 467 U.S. at 89.  When a defendant makes a Batson
objection, he is required to establish a prima facie case of racial
discrimination.  The burden then shifts
to the State to tender a racially neutral reason for its strike.  Ladd v. State, 3 S.W.3d 547, 563 (Tex.
Crim. App. 1999).  The burden then
returns to the defendant to prove by a preponderance of the evidence that the
discrimination was purposeful.  Id.

Each of the State=s
reasons is racially neutral on its face, and each has been approved by courts
in other cases.[3]  Allen argues that Miller-El v. Dretke,
545 U.S. 231 (2005), imposes a higher duty on trial courts to examine the
genuineness B instead
of the reasonableness B
of the State=s
proffered reasons and that a trial court may not simply accept the State=s reasons at face value but must
examine them.








In Miller-El, 545 U.S. 231, the Supreme
Court considered a habeas corpus challenge to a death penalty sentence on the
basis of the State’s alleged use of peremptory challenges in a racially
discriminatory manner.  The Supreme Court
neither altered Batson=s
three-part, shifting burden nor specifically altered the procedures for
conducting a Batson hearing.  The
court looked at the particular facts of that case and made a determination
based upon those facts that a constitutional violation had been shown.  Miller-El=s
impact comes not from the establishment of new rules or procedures but from its
illustration of a proper Batson challenge review.  See Murphy v. Dretke, 416 F.3d 427,
439 (5th Cir. 2005), cert. denied, 126 S.Ct. 1028 (2006) (The Supreme
Court “did not announce any new elements or criteria for determining a Batson
claim, but rather simply made a final factual and evidentiary determination of
that particular petitioner’s Batson claim.”).

We do not read Miller-El to alter the
adversarial process by requiring the trial court to develop evidence as opposed
to weighing the parties’ evidence.  Trial
courts have the discretion to ask counsel or prospective jurors questions to
clarify the issues, but the ultimate responsibility for developing evidence
remains with the parties.  This assures
that those with the most at stake will have every incentive to develop the
evidence necessary to support their position and should result in the trial
court having the benefit of all relevant information when making its decision.

The range of potential relevant evidence is
broad.  The Supreme Court’s analysis
indicates that it is appropriate to consider the effect of the State’s strikes
on the racial composition of the jury, perform side-by-side comparisons of
minority veniremembers who were struck with Anglos who were not, assess the
prosecutor’s credibility, consider any disparity in the types of questions
asked of minority veniremembers versus Anglos, examine the use of procedural
tactics to alter the panel’s order, and review any extrinsic evidence of
discrimination.  545 U.S. 231.  In Miller-El, each of these factors
weighed in favor of a finding of purposeful discrimination.  They do not in this case.

In Miller-El, the State struck nineteen of
twenty prospective African-American jurors. 
In this case, the State struck four African-Americans.  Two were excluded by agreement, and four
others served on the jury.  The record
does not indicate whether Allen struck any minority veniremembers;  therefore, it is impossible for us to determine
the exact statistical impact of the State’s strikes on the panel.  However, 
even if Allen struck no minorities, we cannot say that a numerical
analysis of the State’s strikes clearly points to purposeful
discrimination.  








Allen points us to no evidence that the State
treated minority veniremembers any differently during questioning than it did
Anglos, that it struck minority veniremembers for reasons which also applied to
Anglos who were not struck, that the prosecutor asked for a shuffle, or that
the prosecutor made any factual misstatements during the voire dire
hearing.  No extrinsic evidence was
offered to show a general policy or practice by the prosecutor’s office of
excluding minority veniremembers.[4]
Finally, Allen makes no claim that he was not afforded a reasonable opportunity
to rebut the prosecutor’s explanations.  Cf.
Davis v. Fisk Elec. Co., 187 S.W.3d 570 (Tex. App.CHouston
[14th Dist.] 2006, pet. filed).  We
cannot say that the trial court’s decision to deny Allen’s Batson
challenge was clearly erroneous.  Allen=s first issue, therefore, is overruled.

Cross-Examination of Accomplice Witness

The State called Truman Husband as a witness
during its case-in-chief.  Husband had
previously entered an open plea of guilty to the same robbery charged against
Allen and had waived his right to a jury trial. 
The judge presiding over Allen’s trial received the plea and was
responsible for assessing Husband’s punishment. 
Husband had not been sentenced at the time of Allen’s trial.  Allen’s counsel requested that the prosecutor
disclose any plea agreement with Husband. 
The prosecutor responded that no plea bargain had been offered and that
Husband was going open to the judge for punishment.

During Husband’s direct examination, he testified
that no one from the district attorney’s office had made him any promise, that
he had entered an open plea, and that the trial court was solely responsible
for assessing his punishment.  He
acknowledged that he faced anything from probation to life in prison.








Allen’s counsel reserved his right to
cross-examine Husband and later called him as a witness during Allen’s
case-in-chief.  Counsel indicated to the
court, outside the presence of the jury, that he intended to ask Husband about
any offers of punishment that he may have received.  The trial court refused to allow questions
about any specific plea-bargain offer but did allow Allen’s counsel to question
Husband about whether he expected to gain some benefit by testifying.  The trial court explained its ruling saying: “[R]ight
now, [Allen’s counsel] can’t ask [Husband] what was C
what was your plea deal because, as far as the Court’s concerned, there is no
plea deal.”

Allen argues that he was denied evidence bearing
on Husband’s credibility.  Allen relies
upon Virts v. State, 739 S.W.2d 25 (Tex. Crim. App. 1987), for the
proposition that the failure to allow cross-examination regarding all portions
of a plea-bargain arrangement is clearly erroneous because it deprived him of
the opportunity to demonstrate bias or motive. 
Allen argues that the rule is no different for open pleas, relying upon Parker
v. State, 657 S.W.2d 137 (Tex. Crim. App. 1983), and Spain v. State,
585 S.W.2d 705 (Tex. Crim. App. 1979).

Trial courts have wide latitude to impose
reasonable restrictions on cross-examination. 
Virts, 739 S.W.2d at 28; see also Blanco v. State, 18
S.W.3d 218, 222 (Tex. Crim. App. 2000) (trial courts have broad discretion to
impose limits on cross-examination to avoid harassment, prejudice, confusion of
the issues, endangering the witness, and the injection of cumulative or
collateral evidence).  Accordingly, we
review the trial court’s ruling for an abuse of discretion.

In Virts, 739 S.W.2d at 25, the trial court
refused to allow the defendant to question an accomplice witness about her
mental health medical history.  The court
held this was error.  Id. at
27-30.  The court focused on the fact
that the defendant and accomplice provided significantly different versions of
the crime and that the jury’s verdict indicated that it had accepted the
accomplice’s version and rejected the defendant’s.  This case is distinguishable because the jury
in Virts had no knowledge that the accomplice had a history of mental
illness.  Here, the jury knew that
Husband had pleaded guilty and would be subsequently sentenced by the trial
court and, therefore, that his motive for testifying and could factor this into
their assessment of Husband’s credibility.

Parker, 657 S.W.2d 137, and Spain,
585 S.W.2d 705, are similarly distinguishable because in each case the
accomplice received something of value from the prosecutor’s office which could
serve as a motivating factor for their testimony but which was not disclosed to
the jury.  In Parker, the
prosecutor dismissed several charges against the accomplice, including the same
robbery charge for which the defendant was tried, before trial.  657 S.W.2d at 138-39.  In Spain, the accomplice received a
probated sentence for the same offense. 
585 S.W.2d at 710.  Neither jury,
however, was aware of the witness’s potential motivation.  In the present case, it is clear that Husband
received nothing of value from the prosecution. 
His motive was potential leniency from the trial court.  The jury was well aware of that motivation.

Allen has identified no additional substantive
information that further cross-examination could have revealed that would have
aided the jury.  Cf. Ramirez v. State,
976 S.W.2d 219, 223 (Tex. App.CEl
Paso 1998, pet. ref=d) (trial
court did not err by prohibiting defense counsel from asking the State’s
witness about the dismissal of the original charges filed against him because
the jury knew of an agreement between the witness and the State; knew the
witness’s vulnerable relationship with the State; and could evaluate his
potential motive, bias, or interest). 
Even if we completely discount the prosecution’s statement that no
offers had been made, any offer was immaterial since the trial court was solely
responsible for assessing punishment.  We
find the trial court did not abuse its discretion when it limited the scope of
Allen’s cross-examination.  Allen’s
second issue is overruled. 

Prosecutorial Misconduct During Closing
Argument

The State called Chandler as its first
witness.  Chandler described the robbery
and identified Allen as the man who held a gun on him.  Outside the jury’s presence, Allen’s counsel
indicated his intention to reserve cross-examination.  Allen’s counsel did not call Chandler during
his case-in-chief, but the State recalled Chandler during rebuttal.  Allen’s counsel did not cross-examine
Chandler following his rebuttal testimony. 


The State made the following comments, during its
closing, about the lack of cross-examination:

[PROSECUTOR]: Let’s talk about the credibility of
Mr. Chandler.  Now, folks, I=ll submit to you, and I think you=ve seen through their performance in
trial, these are excellent attorneys. 
They=re
knowledgeable, they’re experienced. 
Folks, if they could impeach the credibility of Hubert Chandler in any
way, they would have tried to cross-examine him.  They did not ask one single question.  And why is that?

 

[DEFENSE COUNSEL]: Excuse me, Judge.  I=m
going to object to that.  That goes to
our strategy.  Its outside of anything
that has C that=s absolutely improper statement by the
prosecutor to suggest why we=re
doing something.

 

[THE COURT]: I=ll
overrule your objection.

 








[PROSECUTOR]: Folks, do you remember when we spent
two hours going through police reports? 
Did that really help you at all? 
It really didn=t.  It wasn=t
really about the people that were there and the people that saw what happened.

 

If they=re
willing to spend two hours on police reports about stuff that=s really not that important, can=t they ask a few questions of the man
who ID=d their
client?

 

[DEFENSE COUNSEL]: I=m
going to object to that, that=s
a matter for counsel.

 

[THE COURT]: Sustained.

 

[DEFENSE COUNSEL]: If you=d
instruct the jury to disregard the last remark.

 

[THE COURT]: Folks, if you=d
disregard the last remark.

 

[DEFENSE COUNSEL]: Ask for a mistrial.

 

[THE COURT]: Overruled.

 

. . . .

 

[PROSECUTOR]: [The defense counsel] wants to
comment on Hubert=s
memory.  Well, I=ll
submit to you, why didn=t
he test his memory?  Let=s think about that.

 

[DEFENSE COUNSEL]: I=m
going to object to that.  That=s going to C

 

[THE COURT]: Sustained.

 

[PROSECUTOR]: Hubert remembered everything else.

 

[DEFENSE COUNSEL]: Would you admonish the jury to
disregard that.

 

[THE COURT]: Disregard those words.

 

[DEFENSE COUNSEL]: We=d
ask for a mistrial.

 

[PROSECUTOR]: Hubert remembered every other last
detail.  Every other last detail, he
remembered.

 








Allen argues that the prosecution=s
argument was an attempt to strike at him through his counsel and cites Gomez
v. State, 704 S.W.2d 770 (Tex. Crim. App. 1985), for the proposition that
this requires a new trial.  In Gomez,
the court reversed a decision of this court[5]
and held that the prosecutor=s
comments during closing argument denied the defendant a fair trial. This court
had found the argument improper but held any error was cured by the trial court=s instruction to the jury to disregard.

In Gomez, the State accused the defense
counsel of manufacturing evidence and being paid to get the defendant off the
hook.  Id. at 771.  The court noted that this constituted
uninvited and unsubstantiated accusations of improper conduct.  The harm flowed from the fact that the public
does not generally understand that a defense counsel has an ethical obligation
to defend his client regardless of any personal opinion on his client=s guilt.  Accusations of improper conduct, then, have
an inherently inflammatory character because they invite the jury to discredit
the accused=s
defense.

The State responds initially that Allen is
presenting a multifarious point of error because he is complaining of three
separate comments in one issue.  The
three comments are sufficiently similar that it is appropriate to consider them
in one issue.  Next, the State contends
that nothing has been preserved for review because Allen=s
objections were imprecise.  Two of the
three objections were sustained.  If the
State felt the objections were imprecise, it was the State=s burden to raise that challenge at
trial.  Finally, the State contends the
issue has been waived because the record does not contain a ruling on Allen=s final motion for mistrial.  Allen=s
first motion for mistrial was overruled. 
The subsequent argument raised the same issue, and Allen=s objection to it was sustained.  The record suggests that counsel and the court
were speaking over one another, which can cause confusion in the record or
proceedings.  Allen=s counsel should have obtained a
specific ruling on the last motion for mistrial; but, under all of the facts,
we find that the issue has been preserved for our review.

Alternatively, the State contends that, if the
issue has been preserved, no reversible error is shown because its comments on
defense counsel=s failure
to cross-examine a witness were permissible. 
We need not determine if the prosecution=s
comments were appropriate and express no opinion on them.  Even if the trial court correctly held the
argument was inappropriate, the distinction between the comments in Gomez
and those made by the prosecution in this case is the absence of any charge of
misconduct.  That distinction is
critical.  








Proper jury arguments by the prosecution are (1)
summation of the evidence; (2) reasonable deduction from the evidence; (3)
answer to argument of opposing counsel; and (4) plea for law enforcement.  Wesbrook v. State, 29 S.W.3d 103 (Tex.
Crim. App. 2000).  Chandler=s credibility was an appropriate subject
of comment.  The prosecution=s comments do not rise to the level of
accusing defense counsel of improper conduct and were not an attempt to inflame
the jury by reference to general prejudice against defense counsel or to
matters outside the record.  

In Satterwhite v. State, 858 S.W.2d 412,
424-25 (Tex. Crim. App. 1993), one of the defendant=s
attorneys testified in a competency hearing in connection with a capital murder
case.  During closing argument, the
prosecutor made negative comments about counsel=s
credibility.  The court held this was
appropriate because prosecutors are allowed to argue about the credibility of
the defendant=s
witnesses.  The defense counsel placed
his credibility as a witness in issue when he testified.  The court drew a distinction between arguing
the credibility of a witness=s
testimony and attacking the role of a defense lawyer.  

The prosecution=s
argument did not suggest any impropriety by Allen=s
counsel.  It did not appeal to any
prejudice against defense lawyers or inject matters outside the record C the jury was aware counsel did not
cross-examine the victim.  If it was
improper to point out the lack of cross-examination in support of the victim=s credibility, the trial court=s instruction to the jury to disregard
the prosecution=s
comments was sufficient to address any harm. 
Allen=s third
issue is overruled.

Defendant=s
Right of Allocution  

Allen waived his right to testify in both the
guilt/innocence and punishment phases of the trial.  The State waived its opening argument in the
punishment phase.  Allen=s counsel requested that Allen be
allowed to briefly address the court before he began his oral argument.  The trial court denied that request.  Following the conclusion of oral argument,
the trial court announced that Allen was being sentenced to twenty-two years
confinement in the Institutional Division of the Texas Department of Criminal
Justice.

Allen argues that he had a right before the trial
court pronounced sentence to be asked if he had anything to say why the
sentence should not be pronounced against him, citing  Tex.
Code Crim. Proc. Ann. art. 42.07 (Vernon Supp. 2005).  This statute provides:








Before pronouncing sentence, the defendant shall be asked whether
he has anything to say why the sentence should not be pronounced against
him.  The only reasons which can be
shown, on account of which sentence cannot be pronounced, are:

 

1.  That the
defendant has received a pardon from the proper authority, on the presentation
of which, legally authenticated, he shall be discharged.

 

2.  That the
defendant is incompetent to stand trial; and if evidence be shown to support a
finding of incompetency to stand trial, no sentence shall be pronounced, and
the court shall proceed under Chapter 46B; and

 

3.  When a
person who has been convicted escapes after conviction and before sentence and
an individual supposed to be the same has been arrested he may before sentence
is pronounced, deny that he is the person convicted, and an issue be
accordingly tried before a jury, or before the court if a jury is waived, as to
his identity.

 

Allen does not contend that any of Article 42.07=s three reasons for withholding
pronouncement of sentence apply to him. 
His position appears to be that a defendant has a right to speak in
mitigation of his sentence.  In Eisen
v. State, 40 S.W.3d 628, 636 (Tex. App.CWaco
2001, pet. ref=d), the
court held that a defendant did not have a constitutional right of allocution
and that the trial court=s
failure to follow Article 42.07 was not preserved for review when the defendant
did not contend that one of the statute=s
three reasons applied to him.  We find
the court=s
reasoning persuasive.  Allen had the
right, through counsel, to present evidence and argument during the punishment
phase of the trial to support a mitigation request.  The trial court should have afforded Allen
the opportunity to speak before sentence was pronounced, but because Allen does
not claim that he has been pardoned, is incompetent, or has been misidentified
following an escape, he has not established reversible error.  Allen=s
fourth issue is overruled.

                                                            Holding

The judgment of the trial
court is affirmed.  

 

            RICK STRANGE

JUSTICE

June 15, 2006

Do not publish.  See Tex.
R. App. P. 47.2(b).

Panel consists of: Wright, C.J., and

McCall, J., and, Strange, J.











     [1]Batson
v. Kentucky, 476 U.S. 79 (1986).





     [2]Three
minority veniremembers were excluded by agreement.  It appears that two of these were
African-American and one was Hispanic.





     [3]See,
e.g., Johnson v. State, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002) (failure
to disclose prior arrest); Hughes v. State, 962 S.W.2d 89, 91 (Tex. App.CHouston [1st Dist.] 1997, pet. ref=d) (personal experience or belief concerning eyewitness
identification); Brown v. State, 960 S.W.2d 265, 269 (Tex. App.CCorpus Christi 1997, no pet.) (age).





     [4]We
note that Miller-El arose out of a case prosecuted by the Dallas County
District Attorney=s Office and that a 1968 manual from that office and
testimony about its historical jury selection policies from the late 50s
through 1978 were considered by the Supreme Court.  545 U.S. 231. 
The continued relevance of this evidence is best decided by the trial
court in the first instance.  Our role as
the appellate court is to Adetermine whether the trial court=s determination of the prosecutor=s neutrality with respect to race was objectively
unreasonable and has been rebutted by clear and convincing evidence to the
contrary.@  Miller-El v.
Cockrell, 537 U.S. 322, 341 (2003).





     [5]Gomez
v. State, No. 11-83-00308-CR (Tex. App.CEastland
Oct. 25, 1984)(not designated for publication).